# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

UNITED STATES OF AMERICA     )

                                      )

v.                                  )     CASE NO.: 1:16-CR-88-HAB

                                      )

MAURICE SEWELL             )

                                      )

           Defendant.        )

## OPINION AND ORDER

Defendant Maurice Sewell doesn't want to pay the piper.[1] In December 2016, Sewell was charged in a four count indictment with three counts of possession with intention to distribute more than 500 grams of cocaine, in violation of 21 U.S.C § 841(a)(1), and one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and § 924(e)(1). (ECF No. 1). On March 14, 2019, Sewell pled guilty to Counts 3 and 4 of the Indictment pursuant to a binding plea agreement. (ECF Nos. 61, 74). The plea agreement calls for a sentence of 188 months in exchange for the dismissal of Counts 1 and 2.[2] Eight months later Sewell sought to withdraw his plea based

---

[1] The phrase "pay the piper" comes from the legend of the Pied Piper of Hamelin and the famous 1842 poem by Robert Browning, bearing the same name. Although there are variations of the legend, the story is generally about a German town called Hamelin which, after years of contentment, was suddenly plagued by a huge increase in the rat population. The piper is a man, dressed in multicolored clothing (pied), who was a rat-catcher hired by the town to lure rats away with his magic pipe. When the citizens refuse to pay for this service as promised, he retaliates by using his instrument's magical power on their children, leading them away as he had the rats. https://en.wikipedia.org/wiki/Pied_Piper_of_Hamelin. In contemporary terms, the phrase means to accept and to bear the consequences for some action or circumstance.

[2] At then-counsel's request, the Probation Office prepared a "Pre-Plea Guidelines Report" which predicted a presumptive guidelines range of 262 to 327 months if Sewell went to trial and was convicted on all counts. The guideline range is based on Sewell's status as an armed career criminal. (ECF No. 49). However, the binding term of 188 months in the plea agreement is at the low end of Sewell's range of 188 to 235 months, after including a three-point offense level reduction for acceptance of responsibility due to the guilty plea. (ECF No. 115). The binding term of 188 months is 8 months more than the statutory mandatory minimum of 180 months on Count 3.

on the United States Supreme Court ruling in *Rehaif v. United States*, 139 __ U.S. __, 139 S.Ct. 2191 (2019). This Court denied that request on January 17, 2020. (ECF No. 112).

Since he entered his guilty plea in March 2019, Sewell has repeatedly sought to avoid the consequences of that decision. To that end, he has terminated two very competent and highly reputable defense attorneys[3] (ECF Nos. 80, 125); filed letters, while represented by counsel, seeking to withdraw his plea, complaining about counsel, and requesting the undersigned judge recuse herself (ECF Nos. 103, 114, 121, and 133); and, filed a judicial complaint against the undersigned judge. His present motion, filed through his fourth court-appointed attorney,[4] again seeks withdrawal of his guilty plea, this time on the basis that he was not mentally competent to enter into it and that the plea was the product of incompetent counsel. (ECF No. 135). Additionally, the motion requests a mental health examination. (*Id.*). For the following reasons, these requests will be DENIED.

## DISCUSSION

### 1. Mental Health Examination

As noted above, Sewell asks the Court to order a mental health examination nearly eighteen months after he pled guilty to Counts 3 and 4 of the Indictment. His motion indicates that he suffers from "a bipolar condition," is learning disabled, and is on unspecified medication. He seeks a mental health examination by "a psychologist or psychiatrist to ascertain his mental capacity for understanding the terms and conditions of the plea agreement and for entering into the guilty plea." (ECF No. 135 at 2).

---

[3]Sewell filed a civil suit against his last attorney to disqualify him from representation after this Court refused to allow Sewell to proceed without counsel.

[4]It is clear to the Court from the filing that current counsel is preserving the record for Sewell by making these motions and that they are being made at Sewell's request. The opening sentence of the motion recites as much, "[t]his motion is being made on behalf of, and at the request of, Defendant Maurice Sewell."

The court need not expend much time assessing Sewell's request as he is not entitled to a competency evaluation that is backward looking. "The key … is whether the defendant currently suffers, at the time the motion for a competency evaluation is made, a malady that would render the defendant incompetent, not whether a malady affected the defendant years in the past." *United States v. Woodard,* 744 F.3d 488, 493 (7th Cir. 2014). Even if the Court ordered such an exam, the exam would only impact whether he is competent to proceed to sentencing, not whether he was competent at the time he pled guilty. Instead, as will be demonstrated *infra,* his competency to enter into his guilty plea and understand its terms was addressed during his plea colloquy and does not provide any legal basis for setting aside the guilty plea. Moreover, Sewell's assertions that he suffers from "a bipolar condition," is learning disabled, and is on "medication" is not supported by any evidentiary basis and fails to provide even a prima facie showing of a sufficient factual basis for the Court to assess the necessity of a mental health examination. Nor has Sewell presented a valid legal basis justifying such a request.  The request for a mental health examination is, therefore, DENIED.

## 2. <u>Withdraw Guilty Plea</u>

"A defendant has no absolute right to withdraw a guilty plea before sentencing." *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015). Federal Rule of Criminal Procedure 11(d)(2)(B) states that a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence, if "the defendant can show a fair and just reason for requesting the withdrawal." The defendant bears "a heavy burden of persuasion" in showing that a fair and just reason exists. *Collins*, 796 F.3d at 834.

The Seventh Circuit has recognized three general grounds that merit withdrawal of a guilty plea: "where the defendant shows actual innocence or legal innocence, and where the guilty plea

was not knowing and voluntary." *United States v. Graf*, 827 F.3d 581, 583 (7th Cir. 2016). The colloquy required by Federal Rule of Criminal Procedure Rule 11 is designed to ensure that a defendant's guilty plea is entered knowingly and voluntarily. *See* Fed. R. Crim. P. 11(b)(1). "'Once a proper Rule 11 colloquy has taken place, the 'fair and just' ... escape hatch is narrow.'" *Collins*, 796 F.3d at 835 (quoting *United States v. Mays*, 593 F.3d 603, 607 (7th Cir. 2010)).

As set out above, Sewell now maintains his bipolar condition and learning disability prevented him from entering a knowing and voluntary plea. The record, however, strongly refutes the assertion that he was under any disability at the time of his plea hearing. The transcript of the plea colloquy reflects that the Magistrate Judge complied with all the requirements of Federal Rule of Criminal Procedure 11. (Guilty Plea Tr., ECF No. 139). The court properly informed Sewell about the nature of the charges (*id.* at 21-23), the maximum sentence possible (*id.* at 14–17), the trial rights he was giving up (*id.* at 19-21), and the role of the sentencing guidelines (*id.* at 17–18). *See* Fed. R. Civ. P. 11(b).

The court also satisfied itself that a factual predicate existed to support the guilty plea by looking at all the record evidence, and specifically the statements contained in the plea agreement, the statements of the Defendant at the plea hearing and the proffer of evidence from the Government. (*Id.* at 23–31); Fed. R. Civ. P. 11(b)(3); *United States v. Arenal,* 500 F.3d 634, 638 (7th Cir. 2007); *United States v. LeDonne,* 21 F.3d 1418, 1424 (7th Cir. 1994). In fact, during his plea hearing, Sewell stated, "I distributed drugs" and when questioned in more detail by the Magistrate Judge he confirmed that on November 18, 2016, in Fort Wayne, Indiana, he sold cocaine to others. (*Id.* at 23). Likewise, he admitted possessing a handgun and having prior felony convictions. In turn, the Government read a proffer of the evidence into the record. (*Id.* at 24–29).

Sewell then indicated he agreed with the proffer and he was "guilty." (*Id.* at 29). Sewell was under oath when he made these admissions.

Additionally, Sewell testified that he: (1) was not under the influence of any drugs, medications or alcohol; (2) had not been treated for mental illness; and (3) had not been treated recently for addiction to narcotic drugs or substance abuse. (Guilty Plea Tr. at 5–6, ECF No. 139). When asked if he understood what was happening in court and why he was there, Sewell responded "yes" and that he was in court "for the charges" to which he intended to plead guilty. (*Id.*). Sewell advised he had a ninth grade education, had the ability to speak English and could read "to some degree." (*Id*. at 5).

The transcript reflects that Sewell provided affirmative responses when the Magistrate Judge inquired: (1) if Sewell had an opportunity to talk about not only the charges in the Indictment, but his whole case, including any defenses he may have, (Guilty Plea Tr. at 7); (2) if Sewell was satisfied with counsel's representation and the advice he had provided, (*id.*); (3) if counsel read him the plea agreement, (*id.* at 9); and (4) if he had the opportunity to talk to his lawyer before signing the plea agreement (*id.*). In response to whether he understood the terms of the plea agreement, Sewell responded, "[m]ost of it. It was just the binding part; I understood." (*Id.* at 10). When further pressed if there was anything in the plea agreement he did not understand, he responded "Yeah, I understood it." (*Id.*).

The Magistrate Judge specifically discussed the binding terms of the plea agreement in paragraphs 8(c) and 8(d) with Sewell. (Guilty Plea Tr. at 10–12). Those paragraphs call for a sentence of 188 months imprisonment in exchange for the dismissal of Counts 1 and 2 of the Indictment at sentencing. Sewell indicated that he understood those terms and agreed with them. The Court also discussed with Sewell the forfeiture provisions in paragraph 8(e) as well as all the

provisions indicating his waiver of appellate rights. The court asked Sewell if he understood the appellate waiver, if he had discussed it with his attorney, and if he was voluntarily waiving his right to appeal. Sewell responded "yes" to all of those questions.

"A plea of guilty is a formal and solemn step.... A defendant's motion to withdraw is unlikely to have merit if it seeks to dispute his sworn assurances to the court." *United States v. Graf*, 827 F.3d 581, 584 (7th Cir. 2016). "The entry of a plea is not a meaningless act. When a defendant makes representations at a plea hearing, those representations are entitled to a presumption of verity. A defendant presenting a reason for withdrawal that contradicts answers he gave at the plea hearing faces an 'uphill battle.'" *Collins*, 796 F.3d at 834 (internal citations omitted).

In this case, the Magistrate Judge conducted an impeccable plea hearing in compliance with Rule 11. Everything about the hearing points to the fact that Sewell knowingly and voluntarily entered into the plea, was under no mental disability, and understood the nature and consequences his decision to plead guilty. As the cases above hold, Sewell's sworn assertions matter; in fact, they matter so much that Sewell is bound by those assurances despite his most recent attempts to challenge their voluntariness. He has not come close to demonstrating that his plea was anything other than the product of a knowing and voluntary process.

Sewell also makes a secondary argument – that is, that his counsel provided ineffective assistance prior to his entering into the plea and thus, this provides the basis for the Court to set aside the plea as involuntary. Sewell's ineffective assistance claim hinges on two facts. First, he asserts that he did not know prior to his plea about audio recordings of the transactions in the indictment. Second, he argues that counsel did not have him listen to the recordings prior to signing the plea agreement. Had he done so, Sewell claims he would have requested counsel to file a

6

motion to suppress to invalidate the search warrant, that motion would have been granted and the indictment dismissed. It goes without saying then, that Sewell believes he would not have signed a plea agreement.

A petitioner claiming ineffective assistance of counsel bears the burden of showing (1) that trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688-94 (1984); *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011). The right to effective assistance of counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The *Strickland* two-part test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The performance inquiry requires Sewell to show that counsel's representation fell below an objective standard of reasonableness. *Lafler*, 566 U.S. at 163. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (internal quotation marks and citation omitted). "[T]he petitioner must do more than simply allege 'that he would have insisted on going to trial'; he must also come forward with objective evidence that he would not have pled guilty." *Hutchings v. United States*, 618 F.3d 693, 697 (7th Cir. 2010) (internal citation omitted).

Courts begin with the presumption that counsel's performance was not constitutionally deficient, and the petitioner did not suffer prejudice. *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir.), *cert. denied*, 139 S. Ct. 654 (2018). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Sewell has not met either prong of the *Strickland* analysis. Although he asserts that counsel performed deficiently, presumably by not having him listen to the recordings before he pled guilty, he has not demonstrated that this act, even if it is somehow deficient, tipped the scales against him. The Government points out that Sewell's counsel was provided discovery including reports from each of the controlled narcotics buys. Each report details the transactions and references that an electronic recording device was placed on the confidential informant to record the transactions and protect the confidential informant (CI). Counsel was also provided a copy of the search warrant affidavit which details the controlled buys as well as the fact that those buys were recorded. (ECF No. 140-2). A probable cause affidavit completed by the Fort Wayne Police Department details that the CI was fitted with a listening/recording device during the controlled buys and outlines the particulars of the transactions. (ECF No. 140-3). Finally, a letter was sent to Sewell's attorney on January 18, 2017, advising him that audio recordings of the buys were available for review at the United States Attorney's Office. (ECF No. 104-4). Thus, at the very least, the Government made counsel aware of the existence of audio recordings along with all the other evidence supporting the charges against Sewell, evidence that appears to be considerable and extensive.

But, even giving Sewell the benefit of the doubt that his attorney knew of the audio recordings, but Sewell did not *and* that had Sewell listened to them he would have requested his attorney to file a motion to suppress, counsel has "no duty to make a *frivolous* argument." *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003), *overruled on other grounds by Lockhart v. United States*, 136 S. Ct. 958 (2016) (emphasis in original). Indeed, the decision whether to file a motion to suppress or not is usually a strategic call that will be given substantial deference against second-guessing. *See, e.g., Wilson v. Schomig,* 234 F.Supp.2d 851, 871 (C.D.Ill.2002) ("As a general rule, trial counsel's failure to file a motion [to suppress statements] does not establish

incompetent representation, especially when that motion would be futile. Whether or not to file a motion is a matter of trial strategy which will be accorded great deference.") (internal quotation marks and citation omitted). Thus, even if Sewell had requested counsel file a motion to suppress on the basis that he could not be heard on the audio recordings, counsel's strategic decision to file or not file such a motion would be subject to great judicial deference.

Knowing this, there is little question here but that a motion to suppress based on the audio recordings would not have invalidated the search warrant and would have been a frivolous endeavor if pursued by counsel. The search warrant affidavit is thorough and based on more than simply the audio recording evidence. (ECF No. 104-2). The CI procedures for conducting a controlled buy, even without the recordings, lead to a conclusion that controlled drug buys occurred at the specific locations on the dates in question. The CI identified Sewell as the individual who sold the drugs on each occasion and the CI picked Sewell out of a photo array. Moreover, the affidavit includes information obtained during a trash pull at the residence and outlines one of the buys that occurred at the residence. Sewell's assertions that he cannot be heard on the audio recordings makes no difference as suppressing the recording itself would have had little import on the issuance of the search warrant for the residence. There was more than enough evidence without the audio recordings to meet the probable cause standard for issuance of a search warrant. Thus, Sewell has not shown the result of the proceeding would have been different if counsel had filed a motion to suppress based on the audio recordings.

Finally, the chief hurdle Sewell faces is that he cannot demonstrate any prejudice. Without the prospect of a successful motion to suppress looming, Sewell is trapped by the admissions he made in the plea agreement. These include the damning facts that he admitted to the controlled buys and to the fact that he was selling cocaine and possessed guns. His statements at the plea

hearing confirm his guilt at least with respect to Counts 3 and 4 to which he pled guilty. Additionally, Sewell agreed to the Government's summary of the evidence which included facts demonstrating that Sewell waived his *Miranda* rights and signed a written acknowledgment of waiver before indicating to the detectives that "he had been dealing cocaine and crack cocaine for approximately 6 months … he indicated that he deals out of his residence that he shares … and he also delivers the narcotics that he sells." (Guilty Plea Tr. at 26–27). Sewell also agreed to the Government's proffer that "[w]hen asked about the firearms found in the residence, Mr. Sewell stated that there was a pistol in the living room that should be under a cushion on the green couch. He stated that this firearm was his…" (*Id.* at 27). The evidentiary proffer, while referencing the controlled buys, does not mention the audio recordings at all.  Sewell agreed to the proffer and the facts in the proffer suffice to demonstrate Sewell's guilt.

 For all the above reasons, Sewell has not met his burden of demonstrating that counsel was deficient or that the outcome of any proceeding would have been different for him so as to demonstrate prejudice. Sewell's Second Motion to Withdraw his Guilty Plea is DENIED.

**<u>CONCLUSION</u>**

Based on the foregoing, the Defendant's "Request for Mental Health Examination and Second Motion to Withdraw Guilty Plea" (ECF NO. 135) is DENIED. Sentencing will go forward and is set for October 20, 2020 at 1:00 p.m.

SO ORDERED on October 13, 2020.

       s/ Holly A. Brady
      JUDGE HOLLY A. BRADY
      UNITED STATES DISTRICT COURT